Argued and submitted March 22, award of attorney fees reversed, affirmed in all other respects July 17, respondent's reconsideration and appellant's reconsideration denied September 13, both petitions for review allowed November 26, 1985 (300 Or 332)

# MARKET TRANSPORT, LTD.,
*Respondent,*

*v.*

# LOBDELL,
*Appellant.*

## (A8211-07250; CA A31966)

703 P2d 1032

Paul A. Graham, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, James F. Mountain, Jr., Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem.

Jeffrey L. Kleinman, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

The Public Utility Commissioner determined that plaintiff had acted as a common carrier with respect to the transport of unregulated goods for its customer, Fred Meyer, Inc., and that it was therefore responsible for the weight-mile tax imposed under ORS 767.775 *et seq.* On review, ORS 756.580, the circuit court reversed, holding that plaintiff had acted only as a broker with respect to the transactions and was therefore not responsible for the weight-mile tax. The Commissioner seeks reinstatement of his order.

In our review of the Commissioner's order, we do not substitute our judgment for the judgment of the Commissioner on any finding of fact supported by substantial evidence. ORS 756.598(1). The Commissioner's order must disclose a rational relationship between the findings of fact and legal conclusions sufficient to demonstrate that the action was not arbitrary. We need not agree with the Commissioner's inferences or reasoning in order to uphold the order, if it contains findings and conclusions sufficient to allow us to determine whether the reasoning is rational and to test the agency's actions against its grant of power. *American Can v. Lobdell,* 55 Or App 451, 461, 638 P2d 1152, *rev den* 293 Or 190 (1982).

The Commissioner argues that his order should be reinstated, because his findings are supported by substantial evidence. Plaintiff has raised no challenge to the correctness of the Commissioner's findings; our review, therefore, is limited to whether, in the light of his findings, his conclusion that plaintiff is a carrier is a rational one.

All motor carriers are subject to the weight-mile tax "for the use of the highways." ORS 767.815. A separate tax is imposed on brokers, at a rate of six percent of gross revenue. ORS 767.315. The terms "broker," "carrier" and "common carrier" were defined during the relevant time in *former* ORS 767.005:[1]

---

[1] The definitions in ORS 767.005 were amended by Oregon Laws 1981, chapter 117, section 1, and presently read:

"(1) 'Broker' means any person not a 'motor carrier' or a bona fide employe or agent of any carrier who sells or offers for sale any transportation subject to this chapter, or negotiates for or purports to be one who sells or arranges for such transportation.

"(1) 'Broker' means any person not a 'motor carrier' or bona fide employee or agent of any carrier who sells or offers for sale any transportation subject to this chapter, or negotiates for or purports to be one who sells or arranges for such transportation.

"(2) 'Carrier' or 'motor carrier' means common carrier, contract carrier or private carrier.

"* * * * *

"(7) 'Common carrier' means:

"(a) Any person who transports persons or property for hire or who holds himself out to the public as willing to transport persons or property for hire by motor vehicle; or

"(b) Any person who leases, rents or otherwise provides a motor vehicle to the public and who in connection therewith in the regular course of business provides, procures or arranges for, directly, indirectly or by course of dealing, a driver or operator therefor."

Plaintiff hauls regulated commodities as a common carrier under a certificate from the Interstate Commerce Commission and as a contract carrier under permits issued by the Interstate Commerce Commission. It also transports in interstate commerce foodstuffs that are exempt from entry regulation or note prescription by the Interstate Commerce Commission. Approximately 85 percent of plaintiff's transport business is conducted with equipment owned by it; the remainder is conducted with leased equipment and independently operated equipment. Four percent of plaintiff's gross revenue is derived from business for which plaintiff relies on independently operated equipment.

---

"(2) 'Carrier' or 'motor carrier' means common carrier, contract carrier or private carrier.

"* * * * *

"(7) 'Common carrier' means:

"(a) Any person who transports persons or property for hire or who publicly purports to be willing to transport persons or property for hire by motor vehicle; or

"(b) Any person who leases, rents or otherwise provides a motor vehicle to the public and who in connection therewith in the regular course of business provides, procures or arranges for, directly, indirectly or by course of dealing, a driver or operator therefor."

Plaintiff paid the weight-mile tax on all activities which it claims it conducted as a carrier and the broker tax on gross revenues for hauls by independently operated trucks. An auditor for the Commissioner assessed additional weight-mile taxes in connection with a number of hauls made between May 1, 1977, and February 29, 1980. Plaintiff contested the portion of the assessment that it claims is attributable to brokerage activities: 34 trips for Fred Meyer in June, 1979.

The Commissioner found that, when independent operators were used, plaintiff secured and arranged transportation, handled all claims and tendered to the operator certain fees and other intermediate charges. Plaintiff provided lists of published tariff rates for unregulated commodities to its customers and advanced funds to the operators for fuel, repair and labor. The operator reimbursed plaintiff for all advances, claims and shortages. Plaintiff had group cargo insurance, which was extended to include operators who, in turn, paid for the coverage.

Plaintiff had an agreement with Fred Meyer for the transport of exempt goods with leased and independently operated equipment. Leased hauls are not in issue. The Commissioner found that plaintiff's agreement with Fred Meyer was continuous and that Fred Meyer had no knowledge of, or concern as to, the details of the transport or the manner in which the hauls were made. If goods were damaged in transit, Fred Meyer looked to plaintiff for settlement. Fred Meyer used other "brokers" and expected the same services from them. The Commissioner found that Fred Meyer's traffic manager was familiar with the services offered by plaintiff and used both the common carrier and "brokerage" services. He also found that plaintiff, like other "brokers," settled its claims with the actual carrier, independently of the customer. He found that, in all significant respects, plaintiff's relationship with the shipper and its control over the transport of goods were the same, whether the transport was "brokered" or performed with leased equipment.

The Commissioner characterized the legal issue as "whether or not Market Transport, because of the control it exercises over the owner operator and the transaction in general, by assuming all responsibility to the shipper, is operating as a common carrier rather than as a broker." On

the other hand, he stated in the "opinion" portion of his order that plaintiff's contractual relationship *with its customers* determines whether it was acting as a broker or as a carrier in a particular transaction, regardless of the means by which plaintiff transported the goods. The order states the criteria to be considered:

> "If an entity holds itself out to arrange for and perform the transportation, accepts the responsibility for the timely pickup and delivery of the commodities, insures and handles all loss and damage claims, bills the shipper as the carrier, and purports to act only for itself and not as an agent for a third party, then that entity may be found to be acting as a carrier."

The Commissioner concluded that plaintiff had conducted itself in such a manner that it had acted as a common carrier.

■ The Commissioner urges that the quoted criteria are reasonable and consistent with the statutory definition of the term "carrier." We agree, but our review involves a further step. The Commissioner's order must reflect a rational relationship between the facts found and the legal conclusion reached by application of the criteria. *American Can v. Lobdell, supra.* In this respect, the order is lacking.

■ The Commissioner's order does not include a finding that plaintiff held itself out "to arrange for *and perform* the transportation * * *." (Emphasis supplied.) The Commissioner would infer a holding out "to perform" from the findings regarding the transportation arrangement between Fred Meyer and plaintiff. Those extensive findings focus on Fred Meyer's complete delegation of control and responsibility to plaintiff and its indifference to, and ignorance of, the means by which the transport of goods was to be performed. They do not, by necessity, lead to the conclusion that plaintiff held itself out or agreed *to perform* the actual moving of the goods. The most that can be drawn from the facts is that plaintiff agreed to ensure that the goods would get transported.

We agree with the Commissioner that a carrier is one that holds itself out *to perform* transportation or, under the statutory definition, "to transport persons or property * * *." *Former* ORS 767.005. The apparent arrangement here is distinct from that described in the statute, even though the distinction is subtle. Any broker might participate in such an

arrangement without representing a willingness to become actually involved in moving the goods. The distinction makes the difference. There are no findings that plaintiff held itself out to Fred Meyer to execute the agreement by performing the transportation. Under the Commissioner's own test, plaintiff's conduct was not sufficient to permit it to be characterized as a carrier. The trial court properly reversed the Commissioner's order.

■    Defendant asserts that the circuit court erred in awarding attorney fees under ORS 182.090, which provides, in part:

> "(1)   In any civil judicial proceeding involving as adverse parties a state agency as defined in ORS 291.002 and a petitioner, the court shall award the petitioner reasonable attorney fees and reasonable expenses if the court finds in favor of the petitioner and also finds that the state agency acted without a reasonable basis in fact or in law."

Attorney fees must be awarded if the court finds that the agency "acted without a reasonable basis in fact or in law." We have construed identical language in ORS 183.497(1)[2] to require an award of attorney fees if the agency's action under the facts found by the agency was "such that a reasonable agency would not have so acted," or if the agency's construction of the laws applicable to the case was "such that a reasonable agency would not have so construed the . law." *Johnson v. Employment Division,* 64 Or App 276, 283, 668 P2d 416 (1983). That interpretation is applicable here in determining whether the trial court correctly held that the Commission's order was without a reasonable basis in fact or in law.

■ ■    The trial court reasoned that the Commissioner's criteria for identifying a carrier were broad enough to include the statutory category of "broker" and that the Commissioner had thereby effectively ignored that category so as to tax all brokers as carriers. The court concluded, therefore, that the order was unreasonable as a matter of law. As we have stated,

---

[2] ORS 183.497(1) provides:

"(1) Notwithstanding ORS 183.495, in a judicial proceeding designated under subsection (2) of this section the court shall allow a petitioner reasonable attorney fees and expenses if the court finds in favor of the petitioner and determines that the state agency acted without a reasonable basis in fact or in law."

the Commissioner's criteria are consistent with the statutory definition of the term "carrier," and, according to our holding on the merits, they exclude one who agrees to provide transportation, but who does not move or agree to move the goods. That person is in the "broker" category. The Commissioner's order was not, therefore, unreasonable as a matter of law. Additionally, although we hold that the facts found by the Commissioner do not support the conclusion that plaintiff was a carrier, we cannot say that the conclusion had no reasonable basis in fact or in law, in view of the vague statutory distinction between the terms "broker" and "carrier." Plaintiff was not entitled to attorney fees.

Plaintiff has raised a number of collateral points which, it argues, require that the trial court's decision be affirmed. Because of our holding, we need not reach them.

Award of attorney fees reversed; affirmed in all other respects.