Argued and submitted September 12, reversed and remanded for reconsideration
December 21, 1988

KELLER et al,
*Petitioners,*

*v.*

OREGON GOVERNMENT ETHICS COMMISSION,
*Respondent.*

(CA A46742)

766 P2d 402

Robert E. Franz, Jr., Eugene, argued the cause and filed the brief for petitioners.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Warden and Rossman, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioners, officials of the City of Klamath Falls, seek review of the Commission's order imposing on each of them a $1,132.50 penalty for their spouses' receipt of gifts of food, lodging and travel in violation of *former* ORS 244.040(2).

The case was decided on stipulated facts and agreed legal issues:

"AGREED FACTS

"1. At the time of the alleged violation of *[former]* ORS 244.040(2), [petitioners] were public officials serving the City of Klamath Falls, Oregon, in the following capacities:

| | |
|---|---|
| "James Keller | City Manager |
| "Jeffrey Ball | City Attorney |
| "George Flitcraft | Mayor |
| "Harold Howard | Council Member |
| "Harold Douglas | Council Member |
| "Paul Jones | Council Member |
| "Lloyd Wilson | Council Member |

"2. On August 6, 1984, the investment banking firm of Dillon, Read & Co., Inc. (hereinafter referred to as Dillon Read) was selected to underwrite a two-hundred and fifty million dollar ($250,000,000) issue of electric revenue bonds. The bonds were to be issued by the City of Klamath Falls to finance the construction of a dam and power plant known as the Salt Caves Hydroelectric Project.

"3. On April 22, 1985, the City Council of Klamath Falls voted to approve the aforementioned bond issue and to approve Dillon Read as both the underwriting and remarketing agent for the issue.

"4. On May 1, 1985, Dillon Read, acting as an underwriter, purchased the $250,000,000 fixed-rate, temporary bond issue from Klamath Falls. Dillon Read was paid a fee for its services.

"5. On May 1, 1985, Dillon Read * * * also contracted with the City of Klamath Falls to act as the remarketing agent for the adjustable rate, permanent bond issue should the City decide to proceed with the actual construction of the dam and power plant. As remarketing agent, Dillon Read would be paid a fee for its services, but would not be obligated to again act as underwriter for the permanent bond issue.

"6.   Each of [petitioners], while acting as public officials, exercised authority over the events previously described in paragraphs 3, 4, and 5.

"7.   Between the dates of May 13, 1985, and May 16, 1985, [petitioners] and their spouses toured the New York facility of Dillon Read at the firm's expense. The cost of the roundtrip airfares, meals, and lodging furnished to [petitioners'] spouses was $1,132.50 each to Mrs. Keller, Mrs. Ball, Mrs. Flitcraft, Mrs. Howard, Mrs. Douglas, Mrs. Jones and Mrs. Wilson. Dillon Read provided theater tickets in the amount of $45 each for each of [petitioners] but not their spouses who had to pay for their own theater tickets. The spouses' attendance was not required by Dillon Read. The spouses did attend the business tour along with [petitioners] and also attended one dinner at which representatives of Dillon Read were present.

"8.   In addition to [petitioners], two other persons, and one of their spouses, went on the trip to New York, with the same expenses paid by Dillon Read to these three persons. The three persons were Rod Wendt, Harold Derrah and Paula Derrah. Mr. Wendt is an official of Jeld-Wen, Inc., and Mr. Derrah represented Trend West Capital Corporation. Trend West, a subsidiary of Jeld-Wen, provided initial venture capital for the project and has a long term interest. Both Mr. Wendt and Mr. Derrah have provided the City with advice on various financing programs based on their financial expertise.

"9.   The trip and expenses paid for by Dillon Read to [petitioners'] spouses were for an event which did bear a relationship to [petitioners'] office at a time when each [petitioner] was appearing in his official capacity. All expenses paid by Dillon Read were reported to OGEC.

"* * * * *

"STATEMENT OF LEGAL ISSUES

"1.   Do the expenses paid to [petitioners'] spouses constitute a gift within the meaning of ORS 244.020(5)?

"2.   Does the exclusion for food, lodging, and travel set forth in ORS 244.020(5)(c) apply to [petitioners'] spouses?

"3.   Is ORS 244.020(5)(c) sufficiently clear to have informed [petitioners] of what actions were prohibited so as to have provided [petitioners] with due process of law?"

*Former* ORS 244.040(2) prohibited accepting certain gifts:

"No public official or candidate for office or a member of his household shall solicit or receive, whether directly or indirectly, during any calendar year, any gift or gifts with an aggregate value in excess of $100 from any single source who could reasonably be known to have a legislative or administrative interest in any governmental agency in which the official has any official position or over which the official exercises any authority."

*Former* ORS 244.020(5), now ORS 244.020(6), provides, in relevant part:

" 'Gift' means something of economic value given to a public official or member of the official's household without valuable consideration, including the full or partial forgiveness of indebtedness, which is not extended to others who are not public officials; and something of economic value given to a public official or member of the official's household for valuable consideration less than that required from others who are not public officials. However, 'gift' does not mean:

"* * * * *

"(c)    The giving or receiving of food, lodging and travel when participating in an event which bears a relationship to the public official's office and when appearing in an official capacity * * *."

The Commission concluded that the term "public official" in subsection (5)(c), clearly and without need for statutory interpretation, does not include a public official's spouse and that the exception sufficiently informed persons of the prohibited conduct.[1] It also concluded that payment of the spouses' expenses falls within the definition of "gift," because it was "something of economic value * * * not extended to others who are not public officials," despite Dillon Read's payment of the same expenses for the three persons who were not public officials. In support of that conclusion, it said that the three-person "class * * * was not sufficiently large so as to come within the definition exclusion" and that "the offer was not extended without qualification to others who were not public officials."

---

[1] The parties agree that petitioners' own expenses are within the exception to the definition of gift under ORS 244.020(5)(c). We are not called upon to analyze why the Commission conceded that petitioners had "appear[ed] in an official capacity" during their New York tour, given that the City's contracts with Dillon Read had been executed almost two weeks before the date of the tour.

Petitioners argue that their spouses' expenses fall outside the definition of gift, because of Dillon Read's payment of expenses for the three other persons. Two of those persons were officers of corporations which provided financial advice to the City, and one corporation provided the initial capital for the project. The third was a spouse of one of the corporate officers.

The term "others," in the phrase "others who are not public officials," is an inexact term which does not communicate a precise meaning in this context. *See Market Transport v. Maudlin,* 301 Or 727, 736, 725 P2d 914 (1986); *Springfield Education Assn. v. School Dist.,* 290 Or 217, 224, 621 P2d 547 (1980). It could mean anything from one person to the general public as a whole. Although it is true that on review the dispositive question is whether the Commission's action is within the legislative policy underlying the statutory term, it is also true that an agency must express in its order "its reasoning demonstrating the tendency of the order to advance the policy embodied in the words of the statute." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 227-28; *see 1000 Friends of Oregon v. LCDC (Lane Co.),* 305 Or 384, 394, 752 P2d 271 (1988); *see* ORS 183.470. We have difficulty understanding, under the agreed facts, what the Commission means by its conclusion that "the offer was not extended without qualification to others who were not public officials." The Commission also has failed to identify the legislative policy which inheres in the term "others" and to demonstrate how its interpretation advances that policy. Accordingly, we remand the case for reconsideration.[2]

Reversed and remanded for reconsideration.

---

[2] Because of our disposition of this issue, we need not address petitioners' other argument. The entire case must be reviewed on reconsideration, including whether petitioners' spouses come within *former* ORS 244.020(5)(c).