**TOKIO MARINE AND FIRE INSURANCE CO., LTD.,**
**et al., Plaintiffs,**

v.

**AMATO MOTORS, INC.,**
**et al., Defendants.**

No. 90 C 4823.

United States District Court,
N.D. Illinois, E.D.

July 29, 1991.

---

Gus Svolos, Arthur W. Friedman, Miller, Shakman, Hamilton & Kurtzon, Chicago, Ill., for American President Intermodal Co., Ltd.

Dennis Minichello, James D. Reinfranck, Keck, Mahin & Cate, Chicago, Ill., for Tokio Marine and Fire Ins. Co., Ltd. and Chiyoda Fire and Marine Ins. Co., Ltd.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiffs Tokio Marine and Fire Insurance Co., Ltd. (Tokio Marine) and Chiyoda Fire and Marine Insurance Co., Ltd. (Chiyoda) insured a shipment of Panasonic goods for Matsushita Electric Corporation of America (Matsushita). The goods were to be shipped from Japan to Tacoma, Washington and then to Arlington Heights, Illinois. Part of the shipment never was delivered to Arlington Heights, so Tokio Marine and Chiyoda have compensated Matsushita for the missing goods, paying $472,117.41 and $38,194.00 respectively. Now the plaintiffs sue as subrogees of Matsushita to recover the amounts they paid.

According to the plaintiffs, their insured Matsushita, through its shipping agent Hub City, contracted with defendant API to transport the goods from Tacoma, Washington to C & NW's railhead in Chicago. API is the sister company of American President Lines Ltd., a container steamship company conducting an international freight operation. In the mid–1980s, API was established to act as the domestic transportation agent for APL. In that capacity, API contracted with several major railroads, including Union Pacific and Chicago & North Western, to provide interstate transportation for APL's containers. Under these contracts, API would lease the use of the railroads' tracks, engines, and employees to transport APL containers. Over time, APL/API began arranging for the use of their shipping network to transport the shipments of third parties in addition to APL containers. In 1987 API obtained a license issued by the Interstate

Commerce Commission to act as a broker for the transportation of property.

As scheduled, the shipment arrived in Chicago at the C & NW railhead on December 16, 1989. Defendant Amato was to transport them by truck to the Arlington Heights warehouse. Without notifying Matsushita or Hub City, Amato subcontracted the job to defendant Raven Transport and communicated the special numbers needed to pick up the containers of goods. On the scheduled day, a Raven trailer entered the Chicago & North Western yard and the driver asked for one of the Panasonic shipments, providing the secret code number. That part of the shipment has not been recovered. API has moved to dismiss the claims against it.

Plaintiffs assert claims against API under the Carmack Amendment or, alternatively, under common law claims of contract and negligence. Defendant API argues, like defendants Amato, Raven, and C & NW before it, that deregulation of TOFC/COFC service,[1] under the Staggers Rail Act, makes it exempt from Carmack Amendment liability. In addition, API argues that it is not a common carrier and cannot, therefore, be sued under the Carmack Amendment in any case. API also contends that venue is improper in this Court, that it fully performed its contractual obligations, and that plaintiffs have not alleged any duty owed them by API.

## I.

■ API is licensed as a broker for the transportation of property and does not possess a license to do business as a common carrier. However, the law determines common carrier status according to the services offered by an entity, rather than by its corporate character or declared purpose. *Mass v. Braswell Motor Freight Lines, Inc.*, 577 F.2d 665, 667 (9th Cir.1978). API may be liable as a common carrier if it acts as one, even if it is not licensed as such.

There is no rigid test to determine common carrier status. 13 C.J.S. Carriers sec.

2 (1990). Instead, the specific facts of individual cases govern. By statutory definitions, common carriers are persons providing railroad transportation for compensation. 49 U.S.C. sec. 10102(4), 10102(20). By contrast, a broker is one who arranges for transportation for compensation. 49 U.S.C. sec. 10102(1). The crucial element appears to be whether the entity holds itself out to the public generally as the actual transporter of the goods. *Florida Power and Light Co. v. Federal Energy Regulatory Commission*, 660 F.2d 668, 674 (5th Cir.1981); *see also Market Transport, Ltd. v. Maudlin*, 301 Or. 727, 725 P.2d 914 (1986). Accordingly, the question is whether API held itself out as a common carrier.

The memoranda and documents submitted by the parties reveal that, while API has explicitly stated that it is a broker, in some instances API held itself out to be the actual transporter. In the unsigned Memorandum of Agreement between Hub City and APL, the parties specifically state that "shipper understands and agrees that APL is acting as shipper's agent and that APL is not a domestic freight forwarder or a common carrier by rail." In addition, API did not issue the bill of lading, as a common carrier typically would, for the Panasonic shipment at issue. The API Stacktrain Shipping Order, however, states that the shipment was being transported under 49 U.S.C. sec. 11707. API did not notify Hub City that it would not be liable under § 11707, even if the actual carriers were. Plaintiffs allege that this language appeared in over 600 API Stacktrain Shipping Orders for Hub City. By remaining silent on the issue, API appeared to accept the inserted term.

Clearly, API sought status as a broker and not a common carrier. Unfortunately, its advertising brochure is ambiguous about whether API is the actual transporter; while it claims to be the intermediary between shippers and rail carriers in one sentence, it also claims to be a provider of stacktrain services. Shippers could con-

1. The parties agree that the defendants provided trailer on flat car service (TOFC)/container on flat car service (COFC).

strue some statements in its brochure coupled with accepted shipping orders which include common carrier liability language and the use of API containers between shipping points to indicate that API itself is a common carrier. The "holding out" standard prevents common carriers from claiming to be brokers in order to avoid the additional liability imposed on common carriers and protects shippers who are misled by a broker's apparent status as a carrier.

For a motion to dismiss, the Court assumes "well-pleaded allegations are true and draw[s] all inferences in the light most favorable to the plaintiff." *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323 (7th Cir.1990). At this stage, API appears to fall within the common carrier definition as interpreted by the courts. Therefore, it is subject to ICC jurisdiction.

## II.

The Interstate Commerce Commission deregulated TOFC and COFC services in 1981 (46 Fed.Reg. 14348), "pursuant to authority granted by Congress, codified at 49 U.S.C. § 10505 as part of the Staggers Rail Act of 1980." *Quasar Co. v. Atchison, Topeka, and Santa Fe Ry. Co.*, 632 F.Supp. 1106, 1109 (N.D.Ill.1986); *see also Co-operative Shippers v. Atchison, Topeka, and Santa Fe Ry. Co.*, 840 F.2d 447, 448 (7th Cir.1988) and *American Trucking Associations v. I.C.C.*, 656 F.2d 1115 (5th Cir.1981) (ICC's exemption of TOFC/COFC service was authorized and valid). The statute authorizing deregulation requires affected carriers to "provide contractual terms for liability and claims which are consistent with the provisions of section 11707 of this title. Nothing in this subsection or section 11707 of this title shall prevent rail carriers from offering alternative terms...." 49 U.S.C. § 10505(e).

Section 11707 (the Carmack Amendment) states that a common carrier is liable for the actual loss or damage to the transported goods, but may limit its liability through § 10730(c). 49 U.S.C. § 11707(a)(1), (c)(4). Section 10730(c) permits carriers to offer released value rates which limit liability if

the carrier and the shipper agree in writing. "Thus, a rail carrier may limit its liability to a shipper if the carrier can satisfy the requirements of section 10730(c) and section 10505(e)." *Co-operative Shippers v. Atchison, Topeka, and Santa Fe Ry. Co.*, 840 F.2d at 449.

Some courts have found that the ICC and Congress, through the deregulation statutes and regulations on liability which refer to the deregulated services, have expressed the intention that carriers providing TOFC/COFC services remain under the jurisdiction of the Interstate Commerce Act. *See Quasar Co. v. Atchison, Topeka, and Santa Fe Ry. Co.*, 632 F.Supp. at 1109–11; *American Trucking Associations v. I.C.C.*, 656 F.2d 1115, 1124 (5th Cir.1981). Two recent Seventh Circuit decisions have been resolved on contractual terms which were held to have satisfied the Interstate Commerce Act provisions. *Co-operative Shippers v. Atchison, Topeka, and Santa Fe Ry. Co.*, 840 F.2d 447 (7th Cir.1988) (Co-op, an experienced shipper, had opportunity to receive § 11707 terms but chose lower released value rate); *Yamazen U.S.A., Inc. v. Chicago and North Western Transportation Co.*, 790 F.2d 621 (7th Cir.1986) (despite option for § 11707 liability, Yamazen agreed to liability restrictions in return for lower rate). Unfortunately, it is not clear from those opinions if the satisfaction of the applicable liability sections removed the carriers from the Act's jurisdiction or simply fulfilled the Act's requirements for exemption from full value liability.

Congress appears to have unintentionally left a tear in the fabric of the law. It is possible to read the Carmack Amendment and related ICC regulations in conjunction with the Staggers Rail Act as exempting all the defendants and others similarly situated from both federal regulations and state common law. While the existence of ICC jurisdiction and regulatory power over the industry preempts liability under state common law, the deregulation of TOFC/COFC shipments in 1981 seems to release the defendants and other common carriers

providing these services from Carmack Amendment liability.

Despite the plaintiffs' argument to the contrary, it is possible that defendant API has been lost in the regulating shuffle and is now technically free from liability under any theory except an equitable one. On the other hand, the cases explain the state and common law preemption on the basis of ICC regulation and Carmack Amendment liability. *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414–15 (7th Cir.1987). No caselaw supports the interpretation of ICC regulation, or the lack of it, in a case where the court finds deregulation and preemption have worked together to preclude liability.

The alternative claims in the complaint suggest two ways to reach liability: state common law or the Carmack Amendment. The defendants have pointed out the problems with each and they are obligated to go no further than that. Judge Moran, in the *Quasar* opinions, found in federal common law a way to mend the presumably inadvertent tear in the law. *Quasar Co. v. Atchison, Topeka, and Santa Fe Ry. Co.*, 632 F.Supp. 1106, 1112–13 (N.D.Ill.1986) ("To the extent that losses from a deregulated portion of interstate freight carriage would not be directly governed by statute, they would be controlled by federal common law which is drawn from the statutes.") This Court finds a third option, however, which precedes the last resort of federal common law: liability based on the violation of the Congressional statute authorizing the ICC to create exemptions (49 U.S.C. § 10505) and the ICC regulation granting the exemption (46 Fed.Reg. 14348, *see* 49 C.F.R. § 1090.2).

■ Common carrier status places API under the jurisdiction of the ICC; that very premise relieves it of common law liability under the preemption doctrine. The Court holds that API, like the other defendants, is amenable to suit under ICC regulations which require it to offer full liability terms to shippers and, if the shipper selects a released value rate instead, to reduce to writing the agreement for limited liability. In other words, it is required by the ICC to provide for contractual liability "consistent with" the Carmack Amendment terms, although the parties may agree in writing to reduced liability based on a reduced carriage rate. Because the Court finds that API is subject to ICC juridiction, the common law alternative claims against it are dismissed as preempted by federal regulation.

### III.

■ Defendant API argues that venue is not proper in this court under 49 U.S.C. § 11707. Section 11707(d)(2)(A)(i) states that a civil action "against the originating rail carrier" may only be brought "in the judicial district in which the point of origin is located." API maintains that because it has been designated by the plaintiffs as the "initial receiving carrier", it follows that this action must be brought in the federal district court for the state of Washington, where the shipment at issue originated.

The plaintiffs, however, point out that an action "against the carrier alleged to have caused the loss or damage" of the goods may be filed "in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. § 11707(d)(2)(A)(iii). In Counts I and II, the plaintiffs allege that API caused the loss or damage of the missing Panasonic goods and that the loss occurred in this district. Therefore, the plaintiffs are entitled to bring this suit against API in this Court. In addition, judicial efficiency is best served if the action against API is brought in the same forum in which the action against the other named defendants is scheduled to proceed.

### IV.

The current Carmack Amendment count, Count I, is dismissed. The Court will, however, allow repleading of the federal liability claim consistent with the dictates of this opinion.

Count II and Count III are dismissed with prejudice.